**UNITED STATES of America**

**v.**

**CAMBRIA COUNTY, Tax Claim Bureau of Cambria County, City of Johnstown, Greater Johnstown School District, Defendants.**

**Civ. A. No. 81–1241.**

United States District Court,
W. D. Pennsylvania.

Feb. 8, 1982.

Anthony Mariani, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

John Taylor, Ebensburg, Pa., Thomas Kalinyak, Randall C. Rodkey, Johnstown, Pa., for defendants.

## OPINION AND ORDER

TEITELBAUM, District Judge.

The above captioned action was instituted by the United States of America to recover payments made under protest by the Small Business Administration (hereinafter referred to as SBA) to the defendants as penalties, interest, costs, and fees on delinquent real estate taxes. The essential facts are undisputed and this matter is ripe for disposition on the plaintiff's motion for summary judgment.

When the mortgagors of some property located in Johnstown, Cambria County, Pennsylvania, defaulted on loans made by the SBA and which were secured by a first mortgage, the SBA, as mortgagee, began foreclosure proceedings. In anticipation of an execution sale, the SBA requested each defendant to forward an invoice for taxes due. Greater Johnstown School District claimed $1,989.95 including $184.19 for penalties and interest. City of Johnstown claimed $1,216.00, including $135.61 for penalties and interest; Cambria County claimed $496.35, including $54.57 for penalty and interest. The Tax Claim Bureau of Cambria County claimed $50.00 as fees and costs. The SBA purchased the property at the execution sale and thereafter paid all defendants in full but noted that the payment of all sums labeled penalties, interest, fees or costs, a total of $424.37 was paid "under protest". Thereafter, the United States instituted this suit to recover the sums paid under protest. The facts were admitted in the answers and the plaintiff has moved for summary judgment.

The plaintiff contends that absent specific statutory authorization, penalties, interest, fees and costs are not properly assessable against the SBA. The defendants disagree.

State imposed property tax liens are given priority over SBA security interests by 15 U.S.C. § 646 which provides:

Any interest held by the [Small Business] Administration in property, as security for a loan, shall be subordinate to any lien on such property for taxes due

on the property to a State, or a political subdivision thereof, in any case where such lien would, under applicable State law, be superior to such interest if such interest were held by any party other than the United States.

There is no dispute that under Pennsylvania law penalties, interest, fees and costs, like those charged in the instant case, become part of the lien for taxes due. The question presented, then, is whether this subordination is to the "lien" *in toto* as defined by state law, which in Pennsylvania encompasses the interest, penalty, fee and cost assessments, or whether the lien priority is restricted to a lien in the amount of the delinquent taxes due.

In *United States v. Kimbell Foods, Inc.*, 400 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) the Supreme Court held that where Congress has not addressed the specific issue involved, established non-discriminatory state law could be utilized in defining the rights of quasi-commercial agencies like the SBA which voluntarily expose themselves to the risks associated with commercial enterprise. In *Kimbell Foods*, the Court was asked to consider whether a lien held by the SBA or a mechanics lien acquired after the SBA lien was entitled to priority. While the Supreme Court agreed that this issue presented a federal question to be resolved in light of federal law, the Court declined to adopt a general federal rule. Instead the Court held as a matter of federal law that a lien held by the SBA should be given the same priority that a similar lien held by a private commercial party would have under the law of the state where the competing liens were acquired. *Id.* at 740. In reaching this result the Court went to great lengths to explain that a lien held by the SBA represented an interest fundamentally distinct from that of normal tax collection. The Court stated:

The Government argues that applying state law to these lending programs would undermine its ability to recover funds disbursed and therefore conflict with program objectives.... However, we believe significant differences between federal tax liens and consensual

liens counsel against unreflective extension of rules that immunize the United States from the commercial law governing all other voluntary creditors. These differences persuade us that deference to customary commercial practice would not frustrate the objectives of the lending programs.

That collection of taxes is vital to the functioning, indeed existence, of government cannot be denied.... The importance of securing adequate revenues to discharge national obligations justifies the extraordinary priority accorded federal tax liens.... By contrast, when the United States operates a moneylending institution under carefully circumscribed programs, its interest in recouping the limited sums advanced is of a different order. Thus, there is less need here than in the tax lien area to invoke protective measures against defaulting debtors in a manner disruptive of existing credit markets.

To equate tax liens with these consensual liens also misperceives the principal congressional concerns underlying the respective statutes. The overriding purpose of the tax lien statute is to ensure prompt revenue collection. The same cannot be said of SBA...lending programs.

*Id.* at 733–35, 99 S.Ct. at 1461–62 (footnote omitted). Three factors were significant in the Court's decision not to announce a uniform federal rule and to allow established state law to control. These factors were: (1) an absence of a need for a nationally uniform body of law, (2) an absence of any adverse effect on a federal policy, and (3) the unforeseeable affect of altering established commercial practices. Although the Court in *Kimbell Foods* was faced with an issue of interstitial decisionmaking, this Court believes these same factors must be considered in interpreting the statutory framework that establishes and governs the SBA.

In the instant case, plaintiff's sole argument is based on its alleged immunity from interest, penalties, fees and costs. No arguments have been advanced which demonstrate a need for federal uniformity in defining the scope or the extent of a lien which is imposed on property for nonpayment of taxes. As noted in *Kimbell Foods*, the SBA has voluntarily exposed itself to the risks associated with commercial lending and has "promulgated exhaustive instructions to ensure that loan recipients are financially reliable and to prevent improvident loans. The Government therefore is in substantially the same position as private lenders and the special status it seeks is unnecessary to safeguard the public use." *Id.* at 737, 99 S.Ct. at 1463. The state's interest in collecting anticipated property tax revenues is seriously impeded when property owners become delinquent. The interest and fees imposed as part of the liens from which satisfaction of these debts is obtained are perhaps necessary to offset the economic harm suffered by such delinquency. The unforeseeable consequences of denying relief to the state where an SBA mortgagor defaults convinces this Court that absent the special circumstances of need for national uniformity and possible adverse effects on a federal policy, the established state law should be applied. In the case *sub judice*, Pennsylvania law should be applied and the lien for taxes due, therefore, correctly included the interest, fee, penalty and cost assessments.[1]

For the foregoing reasons summary judgment is granted in favor of defendants. An appropriate order will issue.

1. Plaintiff urged this Court to follow *United States v. Consumers Scrap Iron Corp.*, 384 F.2d 62 (6th Cir. 1967). That case is virtually indistinguishable from the case at bar and was decided on the basis of interpretation of the term "taxes due" in Section 646. The Sixth Circuit Court of Appeals held that this phrase was subject to only one meaning, a meaning which of necessity required a uniform federal definition, and that principles of statutory construction required a strict construction of the word "taxes" to exclude the claim of the City of Detroit for penalties and interest on delinquent real estate taxes. While *Consumer Scrap Iron* appears to have been the only case to consider this exact question, the divergence between the rationale of that case and *Kimbell Foods* convinced this Court that a reexamination of the issue is necessary in light of the reasoning set forth in *Kimbell Foods*.